JACK E. GASKILL, appellant, v. FRANCIS GLENN GAHMAN and HOWELL AUTO PARTS, appellees.

No. 51084.

(Reported in 124 N.W.2d 533)

892

November 12, 1963.

Stewart, Miller, Wimer, Brennan & Joyce, by Joseph B. Joyce, of Des Moines, for appellant.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellees.

SNELL, J.—In an action for damages following an intersection collision of motor vehicles a jury returned a verdict for defendants. Plaintiff appeals claiming error in withdrawing a specification of negligence and in improper cross-examination of witnesses. The alleged errors are argued with vigor and ingenuity but the real weakness of plaintiff's case is lack of evidence to support his claim.

I. Plaintiff was a right front-seat passenger in a car driven by his friend, Mr. Elmer Jones. The car was proceeding west on East Walnut Street in Des Moines. The weather was very bad. It was raining and sleeting and there was a lot of slush on the street. The car approached the intersection with East Twelfth Street and stopped responsive to a stop sign. A car (not defendants') approached from the south. Plaintiff's host waited for it to pass and then, seeing no other traffic, proceeded slowly into and attempted to cross the intersection. "All of a sudden" plaintiff's driver turned his head and plaintiff "took another casual look" and saw defendants' vehicle approaching. At that time and place defendants' vehicle was traveling north on East Twelfth Street. There was no intersection stop sign requiring defendant driver to stop. The vehicles collided somewhere in the intersection.

By way of amendment to conform to proof plaintiff as an additional specification of negligence alleged failure of defendant driver "to at all times relevant hereto operate his motor vehicle and travel on the right-hand side of the center of the

street * * * as required by section 321.297 of the Iowa Code." On motion of defendants this specification of negligence was withdrawn and was not submitted to the jury. Plaintiff alleges error. Other specifications not involved in this appeal were submitted.

The record before us is not very helpful in considering plaintiff's first claim of error.

While testifying in the trial court the witnesses were using a blackboard and illustrating their testimony by pointing to what was probably a diagram of the intersection. Undoubtedly this was illustrative and informative to the trial court and jury but it leaves us with nothing on which to consider plaintiff's claim of error. In testifying plaintiff said "When I first saw him, he would have been right in there somewhere, I imagine right in there; not quite that far over the center line, but this was the center line; he would have been practically over in there. As to where Mr. Jones' vehicle was when the collision occurred, that is what I am not so sure about, because we moved some after I told him to stop."

Elmer Jones, plaintiff's host driver, testified that he "couldn't see anybody" and so he pulled out into the intersection. "I would say I was approximately just entering over the halfway mark of the intersection when I glanced out of my eye, I saw Mr. Gaham coming; * * *. When I first saw Mr. Gaham, he was to my left, and I would say he was across the left center line. * * * He slowed in his vehicle before the impact; he tried to avoid the accident; * * *. He was turning or tried to turn, in my observation, the same direction I was going, to his left, down East Walnut Street. The collision occurred at East Twelfth and Walnut Street. I would say it occurred over to the northwest corner of the intersection. On the board, I would say it happened right about in here. I have placed an 'X' at that point, which would appear about the middle of the northwest corner of the intersection."

As stated above we do not have the benefit of either witness's illustrations. If the collision occurred as stated by Mr. Jones in the northwest corner of the intersection defendant driver might properly have been there in making a left turn

as observed by Mr. Jones. From the meager record before us we cannot say that the trial court who saw and heard the witnesses and saw the illustrations was in error in withdrawing the added specification of negligence. The evidence as shown by the record before us is too feeble to support a claim of reversible error.

 Without substantial evidence in support the issue should not have been submitted. Isaacs v. Bruce, 218 Iowa 759, 763, 254 N.W. 57; Curtis v. Wilkins, 248 Iowa 1314, 1317, 1318, 85 N.W.2d 546; Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 198, 61 N.W.2d 696.

II. On cross-examination plaintiff said he had lived in Des Moines since October 1960 and had resided in Des Moines back in the twenties. Without objection these questions were asked and answers received.

"Q. Where did you reside after leaving Des Moines in the twenties? A. When I was convicted of a felony.

"Q. Where did you reside then, someplace here in the state? A. Yes.

"Q. In what institution? A. Fort Madison.

"Q. And for how long were you there? [Over intervening objections by plaintiff's counsel the examination continued.]

"A. Thirty-three years, approximately.

"Q. Have you been back since your original release? A. I was, my parole was violated; I was sent back for a few months and then released again.

"Q. Of what felony were you convicted? A. Convicted of shooting, murder.

"Q. In the first degree? A. Probably; I am not certain.

"Q. Have you ever gone under any name other than Jack Gaskill? A. In the hotel or something, probably, I don't know.

"Q. Have you ever gone under the name of James E. Laverne? A. Yes, I have.

"Q. Have you ever gone under the name of Spike Gaskill? A. That's been my name since I was five years old."

Mr. Jones on cross-examination said he first became acquainted with plaintiff at Fort Madison in the penitentiary. The following examination was received:

"Q. Have you, you have been convicted of a felony? A. I have.

"Q. More than one? A. Do I answer?

"THE COURT: Yes, proper question.

"A. Yes.

"Q. How many? A. I don't know.

"THE COURT: I didn't get your answer.

"A. I said I didn't know. I can't recall.

"Q. Is it more than two? A. Yes.

"Q. More than three? A. No. Well, I would say not more than three."

Plaintiff claims prejudicial and reversible error in such cross-examinations.

■ Section 622.17, Code of Iowa, provides:

"Previous conviction. A witness may be interrogated as to his previous conviction for a felony. No other proof is competent, except the record thereof."

A majority but not all of the cases involving this statute were criminal prosecutions. In oral argument it was suggested that the interpretation and application of the statute should not be the same in civil as in criminal cases. We find no authority for such a distinction.

In State v. Voelpel, 208 Iowa 1049, 1051, 226 N.W. 770, 771, it was said: "This section is applicable to any witness, in either a civil or a criminal case, including a defendant who appears in his own behalf." (Citations) In the cited case the statement may have been dictum but we adopt the statement as the correct rule.

■ III. Under the statute, section 622.17, it is permissible to show by cross-examination, for the purpose of affecting his credibility, that a witness has been convicted of a felony, and how many times. State v. Williams, 197 Iowa 813, 819, 197 N.W. 991, 994; State v. Hall, 233 Iowa 1268, 1271, 11 N.W.2d 481.

IV. The character of previous felony convictions may be inquired into and identified in examination of a witness. State v. Friend, 210 Iowa 980, 992, 993, 230 N.W. 425; State v.

Williams, supra; State v. Carter, 121 Iowa 135, 138, 96 N.W. 710.

V. Inquiry as to previous conviction of a felony is not restricted to the language of the statute. The question need not be put in any particular or stereotyped form. Dickson v. Yates, 194 Iowa 910, 920, 188 N.W. 948, 27 A. L. R. 533; State v. Carter, supra, loc. cit. 137; State v. Friend, supra, loc. cit. 993.

VI. Inquiry may be made on cross-examination as to a witness's former residence and occupation even though it might tend to disgrace and discredit him and show that he is in jail. State v. Pugsley, 75 Iowa 742, 745, 38 N.W. 498; State v. Row, 81 Iowa 138, 143, 46 N.W. 872; State v. Wasson, 126 Iowa 320, 323, 101 N.W. 1125.

VII. "We have often held that the permissible range of cross-examination of witnesses for the purpose of affecting their credibility in general rests in the sound discretion of the trial court." State v. Johnson, 215 Iowa 483, 486, 245 N.W. 728, and citations. Jones on Evidence, Volume 3, section 826.

In 98 C. J. S., Witnesses, section 515j, it is said:

"Although much latitude in the cross-examination of a witness as to his character is ordinarily allowed, the extent to which the cross-examination of a witness for the purpose of discrediting him by injuring his character and reputation may be carried is a matter resting largely in the discretion of the trial court, especially as to specific acts of misconduct or immorality having no other bearing on the issues. This discretion should be liberally exercised for the purpose of ascertaining the truth, and a refusal of the right to examine at all with respect to such matters is improper."

The permissible area of examination for this purpose is broad. Section 622.2, Code of Iowa, provides:

"Credibility. Facts which have heretofore caused the exclusion of testimony may still be shown for the purpose of lessening its credibility."

VIII. Plaintiff argues that it was improper to permit questions as to the nature and number of felony convictions. He argues that after the witness had answered that he had

been convicted of a felony nothing further except the introduction of the record should have been permitted.

The statute does not so limit the interrogation of a witness. The statute permits proof in either of two ways, and from either of two sources, i.e., by interrogation of the witness himself or by introduction of the record. The statute merely makes incompetent proof from sources other than the two specified.

IX. After testifying that he had been in the penitentiary 33 years plaintiff was asked "Have you been back since your original release?" We frown on such an approach to a matter of questionable relevancy and propriety. Such a question might in some cases constitute reversible error. It is conceivable, although not likely, that the witness might have been back for a visit. The ordinary inference, however, is that when a man goes to the penitentiary he has been convicted of a felony. The use of such a smoke screen to create an inference is not recommended.

Here the plaintiff himself removed the prejudice or at least mitigated the damage enough to prevent reversible error. He answered "I was, my parole was violated; I was sent back for a few months and then released again." The matter was not pursued further.

In view of the authorities cited, supra, showing the latitude permissible in cross-examination and the broad discretion inherent in the trial court we cannot say that a witness who had spent 33 years in prison for murder was unfairly prejudiced with the jury by the disclosure that he had been returned for a few months for parole violation.

X. It is not for us to affirm or reverse according to our reaction as to what the jury may have thought important. We comment because of plaintiff's argument. Plaintiff argues with vigor that the jury was misled by prejudice and that his substantial rights have been violated. We do not agree. Plaintiff's handicap was the lack of evidence to support his claim. His evidence purporting to show actionable negligence on the part of defendant was uncertain and extremely weak. His damage was minimal. His knees were bruised and one was cut. He

sought no medical attention at the time. He cured the cuts on his left knee by the application of methylate. One month and 25 days later his right knee was examined and there was expense for the examination and X rays. Apparently no serious trouble was discovered. There is no evidence of any treatment but a prognosis of temporary difficulty because of bruises.

Later at the suggestion of his counsel and undoubtedly preparatory to trial of this case he was examined by an orthopedic specialist. The doctor's findings were as follows—No actual physical disability was found. Subjective findings based on what the patient told the doctor indicated some tenderness. There was a little soft tissue deformity probably caused by a traumatic blow. This would cause some discomfort when crawling on his knees, but no disability.

Plaintiff lost no time at work following the accident. His doctor bill was $10 and his X-ray expense was $10. His subsequent expense for orthopedic examination and X rays was $40. This was proper preparation for trial but the result would not support a very substantial verdict.

The jury's verdict was a logical conclusion based on all of the evidence. There is nothing to indicate that plaintiff suffered prejudice or lost substantial rights because of what plaintiff claims were errors.

The case is—Affirmed.

GARFIELD, C. J., and THOMPSON, PETERSON and MOORE, JJ., concur.

LARSON, THORNTON and STUART, JJ., concur in result.