STATE OF IOWA, appellee, v. SANFORD WESSON, appellant.

No. 52359.

(Reported in 150 N.W.2d 284)

MAY 2, 1967.

Sanford Wesson, pro se.

Richard C. Turner, Attorney General, and David A. Elderkin, Assistant Attorney General, for appellee.

GARFIELD, C. J.—Sanford Wesson was indicted, tried before court and jury, and convicted of the crime defined by section 712.1, Code 1962, of receiving and concealing stolen property exceeding $20 in value, knowing it had been stolen.

Defendant's appeal comes to us upon a clerk's transcript which presents mainly a question of constitutional law upon which we have apparently not before passed directly.

At the trial defendant insisted upon conducting his own defense. The trial judge permitted him to do so but requested an experienced attorney to remain at defendant's side throughout the trial to answer any question he might ask and to offer such suggestions as the attorney thought advisable. Defendant has also insisted upon presenting this appeal without the assistance of counsel.

I. The constitutional rights defendant contends were violated are those guaranteed by Amendment 4 to the Federal

Constitution and a like provision in Article I, section 8, of our State Constitution. The former reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

II. The property defendant was charged with receiving and concealing consisted of United States series E savings bonds, owned by Margaret Moore and Marjorie Gravett, which were stolen when the offices in which they were employed in Omaha, Nebraska, were broken into and ransacked on or about July 21, 1965. Police officers in Omaha notified Des Moines police of the theft of the bonds and furnished them with the serial numbers thereof.

On December 29, 1965, police officers in Kansas City, Missouri, advised Des Moines police of a breakin of offices of Continental Can Company in the former city in which a number of bank checks were stolen. Names of the payees of the checks and other identification thereof were also furnished the Des Moines Police. Payee of one check was R. W. Fulton.

On January 12, 1966, Des Moines police received information that Mary Fulton, an associate of defendant Wesson, tried to "pass" the stolen check last referred to in Des Moines. Mary Fulton was then known to be staying in a room in the Chamberlain Hotel and Wesson and his wife were known to be staying in a room in the Franklin Hotel, both in Des Moines.

On January 13 Detective Crozier of the Des Moines police department obtained search warrants from a municipal judge in Des Moines pursuant to informations and applications sworn to by Crozier, who had received the report from Kansas City, to search the two hotel rooms for the check payable to R. W. Fulton.

In executing the warrant to search the hotel room of Mary Fulton the officers encountered defendant Wesson in the hall on the same floor. He had been seen entering the hotel an hour and a half earlier, without emerging. When the officers asked defendant for identification, he withdrew some papers from his

pocket and threw them on a table. Among them was an envelope from which one of the checks stolen from the Continental Can Company fell out, although it was not the check payable to R. W. Fulton. The envelope also contained several other checks stolen from Continental, although none was payable to R. W. Fulton.

Both Wesson and Mary Fulton were placed under arrest. Validity of the arrest of Mary Fulton is not involved in this appeal. Search of her room in the Chamberlain Hotel failed to reveal the particular check payable to R. W. Fulton.

The officers then searched defendant's room in the Franklin Hotel pursuant to the search warrant authorizing it. Defendant's wife was present at the time. This search also failed to reveal the R. W. Fulton check. In conducting the search, however, the officers observed a paper sack containing $7300 of the bonds which had been stolen in Omaha July 21, 1965, as reported to them by the police in Omaha. Identity of the bonds was verified by their serial numbers furnished the Des Moines officers. The officers took the bonds which included those on which this indictment is based.

The question of constitutional law now before us was presented to the trial court two months before the trial in a motion to suppress evidence apparently prepared by the then attorney for defendant who sat with him through the self-conducted trial. The motion alleged the search warrant described the property for which it was issued as a stolen check drawn on Continental Can Company payable to R. W. Fulton; this check was not found in the search of defendant's room in the Franklin Hotel "but in the course of the search the bonds in question were located and removed from the room without search warrant and are not admissible upon the trial."

The State admitted the facts stated in the above motion but denied the bonds were not admissible in evidence.

The trial court overruled the motion to suppress evidence of the bonds. We think the ruling was correct.

■ III. The rule applicable here, widely supported by authority, is that if entry of the premises is authorized and the search is valid, the Fourth Amendment does not inhibit the seizure of property the possession of which is a crime, even

though the searching officers were not aware such property was on the premises when the search was initiated. Among the articles the possession of which has been declared to be illegal per .se and the seizure of which is not within the constitutional guaranty is stolen property. 79 C. J. S., Searches and Seizures, section 17, pages 792, 793.

Idem, section 83e, page 904, thus states the rule to be applied where the search is under a search warrant: "Accordingly, officers searching for certain goods described in the search warrant under which they are operating are not necessarily limited to a seizure of the goods therein described, since they may, while making a legal search pursuant to the warrant, seize stolen goods or contraband found on the premises."

The first rule stated supra is taken from Harris v. United States, 331 U. S. 145, 155, 67 S. Ct. 1098, 1103, 91 L. Ed. 1399, 1408.

Abel v. United States, 362 U. S. 217, 238, 80 S. Ct. 683, 697, 4 L. Ed.2d 668, 686, involving the search of a hotel room, cites the Harris decision for this: "When an article subject to lawful seizure properly comes into an officer's possession in the course of a lawful search it would be entirely without reason to say that he must return it because it was not one of the things it was his business to look for."

Precedents which support the rule quoted supra from 79 C. J. S., Searches and Seizures, section 83e, include Bennett v. United States, 4 Cir., N. C., 145 F.2d 270, and citations, certiorari denied 323 U. S. 788, 65 S. Ct. 314, 89 L. Ed. 628; Bryant v. United States, 5 Cir., 252 F.2d 746; People v. Mc-Ewen, Cal. App.2d, 53 Cal. Rptr. 362, 365; Hunt v. United States, Mun. App. D. C., 171 A.2d 515, 517, certiorari denied 368 U. S. 972, 82 S. Ct. 449, 7 L. Ed.2d 400; Joyner v. City of Lakeland, Fla., 90 So.2d 118, 120; Brooks v. State, 235 Md. 23, 200 A.2d 177, 178, 180; Williams v. State, 216 Miss. 158, 61 So.2d 793; Daltwas v. State, Tex. Cr. App., 375 S.W.2d 732, 734, 735; State v. McKindel, 148 Wash. 237, 268 P.593. See also State v. Elkins, Ore., 422 P.2d 250, 252, and citations; Annotation, 169 A. L. R. 1419, 1424, 1425.

Also in point on principle is People v. Tetts, 6 Mich. App. 254, 148 N.W.2d 877, 879, where officers in searching a motel room, while making an arrest under an arrest warrant for auto conversion, seized narcotics which were received in evidence upon the trial for illegal possession thereof.

State v. Raymond, 258 Iowa 1339, 142 N.W.2d 444, 449–451, cites both Harris v. United States, supra, 331 U. S. 145, 154, 67 S. Ct. 1098, 1103, 91 L. Ed. 1399, 1408, and Abel v. United States, supra, 362 U. S. 217, 234–241, 80 S. Ct. 683, 697, 4 L. Ed.2d 668, 686, in discussing the rule under which merely evidentiary materials may not be seized but stolen property and property the possession of which is a crime may legally be seized.

The above problem discussed in Raymond is not here present. It is clear the bonds were stolen and their possession, with knowledge they were such, was the crime with which defendant was charged.

We may observe that the supreme court has declared: "it can fairly be said that in applying the Fourth Amendment this Court has seldom shown itself unaware of the practical demands of effective criminal investigation and law enforcement." Elkins v. United States, 364 U. S. 206, 222, 80 S. Ct. 1437, 1446, 4 L. Ed.2d 1669, 1680; Ker v. State of California, 374 U. S. 23, 32, 83 S. Ct. 1623, 1629, 10 L. Ed.2d 726, 737. We approve this statement in State v. Polton, 259 Iowa 435, 441, 143 N.W.2d 307, 311. See also State v. Findlay, 259 Iowa 733, 737, 145 N.W.2d 650, 653.

IV. The trial court was evidently of the view that the warrant to search defendant's hotel room was valid; entry thereof under authority of the warrant was legal; defendant's possession of the stolen bonds was unlawful and, if with knowledge they were stolen, constituted the crime charged in the indictment; under these circumstances seizure of the bonds, although not referred to in the search warrant, was not unreasonable, in violation of the Fourth Amendment or a similar provision in Article I, section 8, of our State Constitution.

No authorities to support defendant's claim of error in the overruling of his motion to suppress evidence of the bonds have come to our attention.

We find no error in any other respect revealed by the transcript on which defendant chose to submit the appeal. Hence the judgment is—Affirmed.

All JUSTICES concur except THORNTON, J., not sitting.