STATE OF IOWA, appellee, v. WORLEY MORTON HARDESTY, appellant.

No. 52355.

(Reported in 153 N.W.2d 464)

OCTOBER 17, 1967.
REHEARING DENIED DECEMBER 11, 1967.

Alfred M. Pabst, of Albia, for appellant.

Richard C. Turner, Attorney General, Wm. A. Claerhout, Assistant Attorney General, and W. K. Cash, County Attorney, of Albia, for appellee.

LARSON, J.—Pursuant to a reported theft of personal property from a vacant farmhouse in Monroe County, Iowa, a search warrant was directed against the defendant Worley Morton Hardesty on September 1, 1965. On the same date a search of defendant's home in Wapello County by a group of officers and the complainant revealed two articles which had

been reported stolen on August 19, 1965. On October 1, 1965, the defendant was indicted by the Monroe County Grand Jury, accused of the crime of larceny, in violation of the provisions of section 709.1 of the 1962 Code, of one Hoover Electric Vacuum Cleaner and one Stewart Electric Shears, property of William E. Welsh, Jr., of a value of approximately thirty to thirty-five dollars. Defendant entered a plea of not guilty, and a trial to jury resulted in a verdict of guilty. He was sentenced to an indeterminate term in the State Penitentiary of not to exceed five years. He appeals.

Errors assigned upon which defendant relies for reversal are that the trial court erred (1) in admitting testimony of the peace officers present, when the search of defendant's premises occurred, relative to statements made by the defendant to them, when it did not appear that he was first warned that such statements might be used against him; (2) in allowing defendant to be asked if he had been convicted of a felony for impeachment purposes; (3) in admitting into evidence an item seized at the time of the search of his premises which was not included in the search warrant; (4) in admitting into evidence an item which was not in the same condition as when seized under the warrant; (5) in admitting improper evidence of the value of the clipper; (6) in refusing to reduce the charge to that of petty larceny; (7) in giving Instruction No. 11 charging the jury with the duty to determine the aggregate value of the stolen items rather than the value of each item separately; and (8) in giving Instruction No. 10 which did not conform to the period of time set forth in the indictment. He further contends under the whole record it appears that he failed to receive a fair and impartial trial.

At the trial Mr. Welsh identified the Hoover cleaner and the Stewart clipper found at defendant's residence on September 1, 1965, as the property taken from his locked farmhouse in Monroe County in August 1965. He testified he had, at the request of the Wapello County sheriff, met several officers at defendant's home on September 1, that he found these items in plain sight in defendant's bedroom and claimed them as his property. He said that he had used the cleaner (Exhibit P-2) to clean up sawdust and plasterboard in the house he was re-

modeling, that when he was in the furniture business in Blakesburg, Iowa, in 1961 he purchased the cleaner from Baker's Music Store in Ottumwa, and that he purchased the clipper (Exhibit P-1) from Mr. Warner, an auctioneer, in Blakesburg in 1964.

Russell Watters, sheriff of Wapello County, had obtained a search warrant from the Municipal Court at Ottumwa and, together with his deputies and the sheriff and deputy of Monroe County, had entered defendant's home at about 10 p.m. on September 1. He testified that defendant did not object to the search by the officers and Mr. Welsh, and indeed appeared to be a gracious host. Defendant did not object to the taking of these items by the officers at that time.

Sheriff Watters also testified that at the time of the search defendant claimed ownership of the property stating that he had had the sweeper for a long time and had purchased the clipper at a farm sale. Sheriff Bagley of Monroe County also testified that defendant said the clipper was his and that he had bought it at a farm sale sometime in the winter.

Sheriff Watters further testified he and Deputies Bard and Box examined the vacuum cleaner on September 2, 1965, and found a bag therein containing dust and wood fibers. They were placed in envelopes, marked Exhibits P-3 and P-4, and introduced into evidence.

Deputy Bard testified the search warrant called for Exhibit P-2 but not P-1, and that defendant told him he had had the clipper for some time and had used it.

Russell Warner, a farmer and auctioneer, testified that he purchased this clipper from one Thompson for $5.00 and had sold it to Mr. Welsh, and that although he had had no occasion to sell this type of clipper, he thought he knew its fair market value and placed it at from $5.00 to $12.

Harold Mick, operator of a furniture and appliance store in Albia and an authorized Hoover vacuum cleaner dealer, testified he was familiar with this model of cleaner and knew its market value in Albia in August 1965. He said it was worth at least $25.

Defendant testified he bought a clipper similar to Exhibit P-1 at a Roberts farm sale in early 1965 and paid around $2.00

for it and other items in a junk bucket. He said he tried it on sheep, but it was too dull and worn to use. He denied taking the Welsh clipper. He also testified the vacuum cleaner found in his home similar to Exhibit P-2 was bought in Des Moines in 1961 from the Parker Vacuum Cleaner Supply. His Exhibit D-3 was identified as a sales slip showing this purchase, and he explained the name difference on the sales slip by a certificate of the Clerk of Court in Story County (Exhibit D-4), dated in 1960, wherein his former name of McAllen had been changed to Hardesty. He said when the officers arrived he asked them to be quiet so as not to disturb the sleeping children and gave them a free run of the place. He admitted the items P-1 and P-2 were in full view and that he made no objections to their removal that night. He explained the cleaner's contents by saying he had used it to clean a house he had been remodeling. During cross-examination he admitted he had been convicted of a felony.

Mr. Peterson, an auctioneer who ran the Albia Sales Company, testified he thought the clipper P-1, if working, was worth $5.00, and if not, it was junk.

Mrs. Lyons, defendant's mother, testified defendant had the cleaner since 1961 and that she had seen defendant use this cleaner in the house he was remodeling. Defendant's wife testified she had observed both P-1 and P-2 in their home prior to going to the hospital in July 1965. She further testified her trip to a nearby town to get tractor gas for her husband was interrupted for three hours on the night of September 1 by highway patrolmen. They would not permit her and her children to return home until Sheriff Bagley arrived about 10 p.m., but she was present at home when the search warrant was read to her husband.

Mr. Rinehart, manager of the Gamble-Skogmo Store in Albia, testified that the fair value of Exhibit P-2, the vacuum cleaner, was about $10 to $15, and Mr. Klingensmith, an employee of the hospital at Knoxville who also sells vacuum cleaners, testified the value of Exhibit P-2 would not exceed $15.

In rebuttal, Mr. Dereu, manager for the Hoover department of Baker's Music Store in Ottumwa, testified that Exhibit P-5

was the original record of the sale of this cleaner to the Blakesburg Furniture Company in October 1961. Mr. Murray, the assistant postmaster in Albia, testified the address on Exhibit D-3 (the sales slip) bearing zip code numbers of the seller indicated it was executed subsequent to July 1, 1963, when these numbers were first put into effect.

I. In his first proposition defendant contends that he was denied his constitutional rights as guaranteed by the Fifth and Sixth Amendments to the United States Constitution as applied to the states through the Fourteenth Amendment. He maintains that his Fifth Amendment right against self-incrimination was violated because he was not advised (1) that he had a right to remain silent, and (2) that anything he might say may be held against him. He further contends that his Sixth Amendment guarantee of right to counsel was violated because he was not advised (1) as to his right to counsel, and (2) that if he could not afford counsel he could have counsel appointed.

These complaints are based upon rules laid down in Miranda v. Arizona, 384 U.S. 436, 478, 86 S. Ct. 1602, 16 L. Ed.2d 694, 10 A. L. R.3d 974. However, Miranda does not apply here because the trial preceded the Miranda decision. We have no occasion to consider whether any of those contentions in the Miranda decision was applicable.

II. Appellant next asserts it was prejudicial error to permit the county attorney to ask defendant if he had ever been convicted of a felony, and that permitting him to answer in the affirmative had the effect of denying him a fair trial and violated the provisions of Amendment 14, section 1, to the United States Constitution. He cites O'Connor v. Ohio, 385 U. S. 92, 87 S. Ct. 252, 17 L. Ed.2d 189, and 382 U. S. 286, 86 S. Ct. 445, 15 L. Ed.2d 337, Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. Ed.2d 106, Miranda v. Arizona, supra, and Amendment 5 to the United States Constitution, as authority for his position.

This assignment raises an interesting constitutional question which to our knowledge has not been considered directly by the United States Supreme Court. In this state we have often held, in compliance with section 622.17 of the Code, such

a question may be asked and answered for ·impeachment purposes under the rule that the test of admissibility is whether it has a legitimate bearing on points in issue. State v. Meeks, 245 Iowa 1231, 1243, 65 N.W.2d 76, and cases cited. As bearing on this question, also see State v. Frink, 255 Iowa 59, 68, 120 N.W.2d 432.

In any event, the record here discloses that no objection was ever made to this interrogation. When defendant was asked, "Mr. Hardesty, have you ever been convicted of a felony?" he answered, "Yes." This question was asked and answered during cross-examination after defendant's testimony concerning his ownership of the cleaner and the clipper. Its clear purpose was impeachment, and the matter was pursued no further.

 Under the state of this record we must adhere to the rule in this jurisdiction that objections not made in the trial court will not ordinarily be considered for the first time on appeal and the rule that constitutional questions cannot be considered by this court unless specifically raised in the trial court. State v. Ford, 259 Iowa 744, 145 N.W.2d 638, 642; State v. Wallace, 261 Iowa 104, 152 N.W.2d 266, 268; State v. Walters, 244 Iowa 1253, 1261, 58 N.W.2d 4. Also see State v. LaMar, 260 Iowa 957, 151 N.W.2d 496, which considers the cases cited by appellant.

For these reasons we give this assignment no further consideration here.

III. In his third assignment appellant contends the trial court erred in admitting into evidence Exhibit P-1 (the Stewart clipper) over his timely objections, because it was not listed as a stolen article in the search warrant served upon him. It is true the record discloses the clipper was not listed in the search warrant, but it does appear that Welsh listed it in his complaint to the authorities and that he saw and claimed it when it was discovered under the bed in defendant's house the night of the search.

 It is well settled in this jurisdiction that officers looking for certain goods described in a search warrant under which they are operating are not necessarily limited to a seizure

of goods therein described, and they may, while making a legal search pursuant to a warrant, seize stolen goods or contraband found on the premises. State v. Wesson, 260 Iowa 781, 150 N.W.2d 284. Therein we recognized the rule widely supported by authority that if entry of the premises is authorized and the search is valid, the Fourth Amendment does not inhibit the seizure of property the possession of which is a crime. Harris v. United States, 331 U. S. 145, 155, 67 S. Ct. 1098, 91 L. Ed. 1399, 1408. Also see 79 C.J.S., Searches and Seizures, section 17, pages 792, 793, and Abel v. United States, 362 U. S. 217, 239, 80 S. Ct. 683, 4 L. Ed.2d 668, 686.

We have examined the cases cited by appellant, but find none of them applicable here. In State v. Dwinells, 259 Iowa 945, 146 N.W.2d 231, evidence of the search was admitted at trial without objection, and we held the right later to assert illegal search and seizure had been waived. In State v. Shephard, 255 Iowa 1218, 1226, 124 N.W.2d 712, we discussed the application of the Fourth and Fourteenth Amendments to searches and seizures and held they prohibited unreasonable searches and seizures and protected the right of privacy, but were not designed to help the guilty escape the consequences of his acts. In that case we found a voluntary consent to a search and no invasion of privacy.

We find no merit in this assignment.

IV. Appellant next contends the court erred in admitting Exhibit P-2 (the vacuum cleaner) into evidence, in view of the fact that the record shows the cleaner bag had been removed after it had been taken from his premises, and it was therefore not in the same condition as when taken under the search warrant. Appellee asserts a chain of possession of Exhibit P-2 was established and that it was shown to be in substantially the same condition as when taken from appellant's premises. It further pointed out the contents of the disposable bag were preserved and introduced as Exhibits P-3 and P-4.

To be admitted in evidence, property legally seized by police officers must be shown to be in substantially the same condition as when taken. State v. Drosos, 253 Iowa 1152, 114 N.W.2d 526, and citations. In the first instance, this question is to be resolved by the trial court. Kunzman v. Cherokee Silo

Co., 253 Iowa 885, 892, 114 N.W.2d 534, 95 A.L.R.2d 673, and citations.

■ Here we are satisfied a sufficient chain of possession was established and that the exhibit was shown to be in substantially the same condition as when obtained from appellant's premises. The trial court did not abuse its discretion in admitting Exhibit P-2 into evidence.

V. Assignments numbered five and six we will consider together. It is appellant's contention in No. 5 that the testimony of Russell Warner as to the value of the clipper should not have been admitted, for the reason that he was not shown qualified to express an opinion as to its value, and in No. 6 that the court erred by not sustaining defendant's motion to reduce the charge from grand larceny to petty larceny, for the reason that the value of the allegedly-stolen property was not sufficiently shown to exceed $20. These assignments are predicated on the ground that the verdict is not based on competent evidence and that it is against the weight of the evidence. We think this is merely another case of conflicting evidence and believe the witness Warner was shown qualified to express an opinion as to the value of the clipper even though it was obsolete and a market value of it was not readily determinable. State v. Register, 253 Iowa 495, 498, 112 N.W.2d 648; State v. Lewis, 144 Iowa 483, 123 N.W. 168.

■ In these cases the rule was recognized that the general market value of stolen property is to govern in determining the value in cases of larceny, yet when the property has no general market value, other testimony by persons familiar with the property and its condition qualified to express an opinion can be received to aid the jury in establishing its true value.

■ It appears the clipper was obsolete and a market value for it was not readily establishable. It also appears that Mr. Warner had been an auctioneer in that locality for over 25 years, had himself purchased this clipper for $5.00, and had sold it to Welsh for the same figure. He was aware of its condition and obsolescence, and we are satisfied it was not error to permit him to express his opinion as to its value.

■ It would serve no useful purpose to review the evi-

dence of the other valuation witnesses. The State's witnesses stated the market value of the vacuum cleaner was more than $20 and the defense witnesses less than $20. We do not weigh the evidence or decide which of the witnesses had the more sound basis for his opinion. That is the jury function. We are satisfied that each valuation witness was shown qualified to express his opinion, that the issue was properly submitted to the jury, and that the verdict is not against the clear weight of the evidence. See State v. Gallagher, 236 Iowa 123, 127, 16 N.W.2d 604. Whether the value of stolen articles upon which the penalty is based is realistic in recent times is not our problem.

VI. In his next assignment appellant contends the court erred in giving Instruction No. 11 which charged the jury with the duty to determine the value of the vacuum cleaner *and* clipper allegedly stolen. He complains this eliminated the possibility of the jury's finding one of the articles was stolen but the other was not. There is no merit in this assignment for it does not appear defendant objected to the instructions given or requested any instruction other than those given by the trial court at any time.

It is well established in this jurisdiction that party who desires additional or more specific instruction must make timely request therefor. His failure to do so leaves him without complaint upon appeal. State v. Wessling, 260 Iowa 1244, 150 N.W.2d 301, 309, and cases cited; State v. Russell, 245 Iowa 1190, 1205, 66 N.W.2d 35, 43. Here it is conceded that no additional instructions were requested, nor was there any objection as to their sufficiency.

It is also well settled that when considering any instruction given to the jury it must be viewed together with all other instructions submitted, and they must be considered as a whole and read in relation to their context, not separated into parts and treated piecemeal. State v. Katz, 241 Iowa 115, 40 N.W.2d 41; State v. Estrella, 257 Iowa 462, 133 N.W.2d 97. From a reading of all the instructions given it is clear that if the jury did not find that both items were stolen, it was instructed to acquit. Defendant was not prejudiced by this instruction.

VII. Appellant further contends the trial court erred in giving Instruction No. 10 in that the period of the alleged taking was not the same as that set forth in the indictment. He contends the indictment charged him with the taking between August 10 and August 14, 1965, while Instruction No. 10 covered a period from August 1 to August 15, 1965, thus placing an unexpected and unfair burden upon him to account for eleven additional days of time during the trial without adequate warning. This contention, ingenious as it is, cannot be sustained.

It is well settled in this State that the date or dates fixed in the indictment for the commission of a crime are not material, and that a conviction can be returned upon any date within the statute of limitations, if there is no fatal variance between the allegations of the indictment and the proof offered. State v. Beltz, 225 Iowa 155, 159, 279 N.W. 386, and cases cited therein; State v. Russell, supra; section 773.8, Code 1962, now section 773.9, Code 1966. Section 773.9(2) provides: "The allegation in an indictment that the defendant committed the offense shall in all cases be considered an allegation that the offense was committed after it became an offense and before the finding of the indictment and within the period of limitations prescribed by law for the prosecution of the offense."

We find nothing in this offense which requires the exact time of the taking be stated or that it should be deemed material here. Defendant was sufficiently advised of the offense with which he was charged and was not in a position to claim the period covered by the instruction was unexpected. There was ample testimony that the period extended from August 1 to August 15, and no objection was made thereto. In any event, as we have pointed out in Division VI, failure of defendant to point out this objection in any manner in the trial court deprives him of a basis for a successful appeal on that issue now.

VIII. Finally, appellant maintains that upon the whole record it appears that he did not receive a fair and impartial trial. We do not agree.

It appears he was represented by a most able and con-

scientious counsel both in the trial court and here. In fact, it appears no stone was left unturned in an effort to acquit defendant or reduce the charge. The issues were clearly presented to the jury, which found against defendant on both issues, and there was sufficient competent evidence to sustain those findings. The trial court was in a much better position to see and hear the witnesses than are we, and it appears from its comments prior to entering judgment that it fully and fairly considered the record and found in good conscience that it could not and should not grant a bench parole or impose a lesser sentence.

The trial court apparently conducted a presentence investigation and concluded the defendant should be given corrective treatment as well as custodial care. While it does seem a penitentiary sentence is severe for a $25 or $30 theft, it seems wise to place defendant in a place where he can receive corrective treatment and permit the board of parole to determine the length of time necessary to condition him for a safe return to society, but not to extend the term imposed.

It is only in an extreme case, where it is apparent to us that defendant had failed to receive a fair trial, that this court will interfere with the verdict and judgment of the trial court. State v. Myers, 257 Iowa 857, 135 N.W.2d 73; State v. Post, 255 Iowa 573, 123 N.W.2d 11; State v. Kramer, 252 Iowa 916, 109 N.W.2d 18.

In accordance with the admonishment in section 793.18, Code 1966, we have examined carefully the record and the transcript furnished us in this matter and, "without regard to technical errors or defects which do not affect the substantial rights of the parties, "have concluded that the defendant had a fair trial and that the verdict and judgment carefully considered by the trial court before pronouncement of judgment must be affirmed.—Affirmed.

GARFIELD, C. J., and SNELL, MOORE, STUART and LeGRAND, JJ., concur.

RAWLINGS, J., concurs specially.

MASON and BECKER, JJ., join in the special concurrence.

RAWLINGS, J. (concurring specially)—I concur in the result reached in this case but deem some comment appropriate with reference to Division II, relative to the showing of prior conviction for a felony as impeachment.

Admittedly the views expressed on this subject in the opinion are proper under the factual situation disclosed, being in addition thereto compatible with prior decisions of this court. But this does not necessarily make them right, reasonable or realistic.

On the subject at hand, Underhill's Criminal Evidence, Fifth Ed., section 244, pages 601, 602, states: "Now that an ex-convict or a person convicted of a felony is competent as a witness, it remains to inquire to what extent the conviction may be shown as impeachment. As a matter of ordinary observation it is clear to most persons that the mere fact that a witness has been convicted of an infamous crime, or, in fact, of any offense, will not prevent him from telling the truth or from being believed in a case where he has no motive to deceive. It is not usually the facts of a man's past which prompt him to give false testimony, except where the circumstances of the past create his present motives. * * * The rule that a prior conviction may be shown to impeach a witness, which is imbedded in the statutes of the various states, is a survival of the rule that a prior conviction was an insurmountable objection to the competency of the witness."

Testimonial impeachment of a witness means the production of evidence affecting his credibility. See Gaskill v. Gahman, 255 Iowa 891, 896, 124 N.W.2d 533.

Stated otherwise the sole object of impeaching testimony is to discredit a witness by showing his character is such as tends to render what he says unworthy of belief.

In my humble opinion the conviction should be not too remote in point of time. See 2 Conrad, Trial Evidence, section 1142, page 313.

Under existing circumstances I am satisfied the majority opinion should stand, but respectfully submit that in the future

the applicable rule should be modified in accord with the views expressed above.

MASON and BECKER, JJ., join in this special concurrence.