Guy C. HUNT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 2760–2763.

Municipal Court of Appeals for the District of Columbia.

Argued May 8, 1961.

Decided June 12, 1961.

Julius W. Robertson, Washington, D. C., for appellant.

John R. Schmertz, Jr., Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

Appellant was found guilty of violating the Uniform Narcotic Drug Act, Code 1951, § 33–402 (Supp. VIII), and the Dangerous Drug Act, Code 1951, § 33–702 (Supp. VIII). The first question concerns the validity of the search warrant, and the failure of the trial court to suppress evidence obtained in the search.

On May 27, 1960, the United States Commissioner issued a search warrant for appellant's premises and a warrant for his arrest. The contraband as described in the search warrant consisted of "heroin, syringes, tourniquets, cookers and paraphernalia used in the preparation of heroin * * * [and] any other paraphernalia used in the

preparation and dispensation of heroin and any other narcotic drugs. [Also] any other narcotic drugs illegally held."

The warrants were based upon the affidavits of one Meadows, a police informer, and David Paul, a detective assigned to the Narcotics Squad. Meadows' affidavit recited the following facts: Meadows had first met appellant Hunt on March 31, 1960. On that occasion Hunt gave him two white tablets which he claimed were phenobarbital, but which later proved to contain codeine. On May 25, 1960, Hunt gave him two envelopes which he said contained codeine and chloral hydrate crystals. These envelopes Meadows turned over to Detective Paul. It was at this meeting that the appellant told Meadows that if he came back the next day he would give him some narcotics. Hunt insisted that he would not accept money in payment, but only merchandise. The next day prior to his meeting with Hunt, Meadows met with Detective Paul and a Detective Didone and was searched. All the money he was carrying was taken and he was given eight boxes of ladies' stockings. Meadows was then escorted to the vicinity of appellant's apartment where he left the detectives, rang appellant's doorbell and was admitted by him. Appellant told Meadows he was only able to procure three brown tablets but that he expected to get a large supply of narcotics from a friend who worked in a hospital pharmacy. When asked about phenobarbital, which had been mentioned at a prior meeting, Hunt produced an envelope, tore off the top part and gave the bottom part containing white tablets to Meadows along with the three brown tablets. After leaving some of the stockings with Hunt, Meadows left the building and rejoined the detectives. He was again searched and his money returned.

Detective Paul in his affidavit covered much the same ground as Meadows. In addition he recited that he had performed a preliminary field test on one of the brown tablets found on Meadows which indicated the presence of a narcotic; that Meadows was able to identify Hunt from a photograph; and a check with the telephone company revealed that it was Hunt's apartment that Meadows had visited. A defense motion to suppress was overruled.

At the trial of the case Detective Paul and Meadows repeated to a great extent much of what was contained in their affidavits. In addition Paul testified that on May 31, 1960, pursuant to the arrest and search warrants that were issued on May 27, appellant was placed under arrest and a search was made of his premises. Uncovered in the search were thirteen white capsules, forty-five bluish-green tablets and a box of stockings (identified as part of the same stockings given to Meadows). On cross-examination Meadows admitted that he had a history of mental illness; that he had a criminal record; and that the plan to obtain narcotics from appellant originated with Detectives Paul and Didone. The government then presented an expert witness who testified that the tablets obtained on May 26 contained sodium phenobarbital, a "dangerous drug" under the statute, and "pantopon," a mixture of opium alkaloids classified as a narcotic under the statute; also that the tablets and capsules seized May 31 contained "dangerous drugs." [1]

Appellant took the stand and denied giving Meadows drugs at any time. He did admit, however, that Meadows had visited him on May 26th and appeared to be trembling and sweating as if he was "going into withdrawal." In response to Meadows' request for something to give him relief, Hunt testified that he suggested that Meadows "take the cure." He said the stockings found in his apartment were a gift from Meadows for his wife. Appellant testified that he was a practical nurse and president of an organization calling itself "Prescription Nursing Service, Inc." whose pur-

1. The forty-five bluish-green tablets contained "butisol" or butobarbital, a derivative of barbituric acid, and the thirteen capsules contained phenobarbital, also a derivative of barbituric acid, both "dangerous drugs."

pose was to furnish training and advance information to practical nurses; that the service had 165 members; that he used the drugs for teaching purposes;[2] that he obtained the drugs from his students who had retained them from cases they had worked on; and that the superintendent of practical nurses in the District approved of his organization (this was later denied by the superintendent of nurses, a government witness in rebuttal).

■ Appellant first argues that the affidavits executed by Meadows and Paul did not form a basis for the description of the contraband contained in the search warrant. We find no validity in this argument. We think the affidavits disclosed sufficient facts to create probable cause for more than a mere suspicion that the items described in the warrant were in the possession of the appellant. In defining "probable cause" the Supreme Court has said that "we are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant."[3] Under that test, it is accurate to say that allegations in the affidavits were sufficiently strong to justify the issuance of the search warrant for the items described.

■ It is further argued that it was error for the trial court to admit into evidence drugs that were not described in the warrant but which were discovered in the course of the search. This contention is without merit. When a lawful search is executed pursuant to a lawful search warrant, contraband may be seized although not specifically described in the warrant.[4] Appellant was arrested prior to the search and it is well established that the premises under the control of a person arrested may be searched contemporaneously as an incident to the arrest.[5]

■ Appellant next questions the failure of the trial judge to grant an instruction on the law of entrapment. Throughout the trial appellant maintained that he had not committed the crime. When a defendant insists that he did not commit the acts charged, then one of the bases for the defense of entrapment is lacking.[6] On the basis of the record before us we hold that failure to give such an instruction was not error.

■ The final question is whether appellant was entitled to a stronger charge concerning the credibility of the witness Meadows. We are satisfied that the language used by the judge adequately cautioned the jury to consider anything that might impair Meadows' credibility. It included a charge as to possible bias, demeanor and behavior as well as the fact that the jury was to consider anything that might have an adverse effect on credibility. There was no error in this respect.

The evidence being ample to support a verdict of guilty, and the record being free of error, the convictions below must be

Affirmed.

---

2. Code 1951, § 33–704 exempts individuals from the coverage of the Dangerous Drug Act who are engaged in "lawful research, teaching, or testing."

3. Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 549, 69 L.Ed. 1032, 1036.

4. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, rehearing denied 331 U.S. 867, 67 S.Ct. 1527, 91 L. Ed. 1871; see also Palmer v. United States, 92 U.S.App.D.C. 103, 203 F.2d 66.

5. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, rehearing denied 331 U.S. 867, 67 S.Ct. 1527, 91 L.Ed. 1871, and cases cited therein.

6. Rodriguez v. United States, 5 Cir., 227 F.2d 912; United States v. Kaiser, 7 Cir., 138 F.2d 219, certiorari denied 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 483.