Chester Arthur **SCHUTZ**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 9670.

United States Court of Appeals
Tenth Circuit.

May 29, 1968.

Rehearing Denied July 9, 1968.

Michael H. Jackson, Denver, Colo., for appellant.

John W. Raley, Jr., Asst. U. S. Atty., Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before PICKETT, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

Appellant was convicted by a jury of unlawfully entering the First State Bank of Pond Creek, Oklahoma, with intent to commit a felony and of stealing the sum of $1,853.72 from that bank. (18 U.S.C. § 2113(a) and § 2113(b)). This is a direct appeal from those convictions.

A chronological statement of certain pertinent facts, as disclosed by the record, should first be set out. About 5:00 o'clock p. m., Saturday, January 29, 1966, appellant and co-defendant Hall were observed by the city police at a residence in south Wichita, Kansas. On this occasion the two were observed loading luggage, clothing and other articles into a 1965 blue Ford sedan and a 1966 yellow Buick Wildcat automobile, both cars bearing Texas license tags. Photographs of these activities were taken by the observing officers, which photographs were introduced and admitted, at the trial, as evidence against appellant. Schutz, at this time, was observed carrying a green duffle bag over his shoulder and in his hand a black satchel with tool handles protruding therefrom. A similar satchel was observed being carried by Hall. All of these items were placed in the trunk of the Buick car.

During the evening of January 30, 1966, several residents of Pond Creek, Oklahoma, observed either or both a late model yellow Buick and a 1965 blue Ford on the streets of that city. Sometime after midnight of that same night the Pond Creek town marshal discovered that the First State Bank had been entered by the breaking open of a door. Later, it was determined that the sum of $1,853.72 in coins had been taken from the bank. Upon investigation, various tools and other items, including a black bag, a 48-ounce "Craftsman" hammer and a ⅝-inch punch were found in the bank. A green duffle bag was found at the same time in an alley near the bank. At the trial an officer of the Texas Public Safety Department identified the green bag, the hammer and the punch as the same items he had observed in Schutz's residence in Austin, Texas, on August 30, 1965, when he made a search of the residence for narcotics.

The record further discloses that the Wichita police continued their surveillance of the Wichita residence and did not see either Schutz or Hall again until about 11:00 o'clock p. m. on February 1. The following morning these officers were able to observe the same two cars as above described but the license tags had been changed. The Buick car then bore a 1966 Texas tag and the Ford bore an Oklahoma tag, which had been stolen on the night of the bank burglary. The officers, at the time, also observed Schutz and Hall taking things from the trunks of the two cars into the house. A number of photographs were again taken by these officers, all of which corroborated their testimony about what they observed on this occasion.

The evidence also shows that when the bank vault was broken into many of the safety deposit boxes were ransacked and property taken therefrom consisted of rolls of coins, a diamond ring and loose coins in envelopes. On either February 1 or 2 Hall gave a dia-

mond ring, rolled coins in the amount of $45.00 and nine loose coins, which were collector's items, to a lady in Wichita to dispose of. She sold the ring and coins to a Wichita coin collector and during the investigation all were recovered from the collector. The antique coins and the diamond ring recovered were identified in the trial as the coins and ring contained in the bank vault.

Appellant's attack here may be summarized: (1) That both the Kansas and Texas searches were invalid; (2) The evidence was insufficient to sustain the verdict; (3) Error in receiving certain government exhibits into evidence; (4) Bias on the part of the trial judge; and (5) Error in instructing the jury.

Prior to trial Schutz filed a motion to suppress certain evidence and an evidentiary hearing was had upon the motion. There it was contended that the government intended to use the fruits of both the Texas and Kansas searches in the trial to follow. The argument presented there was that the affidavit used to obtain the Texas search warrant was insufficient upon its face and that the officers used unnecessary force in executing the warrant. The first argument presents a legal question and the second, as we will later demonstrate, is a factual question.

The evidence adduced upon this motion shows that on August 30, 1965, two Texas state law enforcement officers procured a search warrant, upon the basis of an affidavit filed by them, from a local magistrate at Austin, Texas. The affidavit and warrant were on a one page printed form with appropriate blank spaces to be filled in by the affiant and the magistrate. The affidavit described the premises to be searched and included "all other outbuildings and motor vehicles appurtenant thereto." It further described the premises as "the building, house or place of Chester Schutz * * *." The purpose of the search was to discover narcotic drugs and the factual information given by affiants had been obtained chiefly from an informant.

The evidence adduced was conflicting as to the force used by the officers in entering the house but it is apparent from the ruling of the trial judge that he accepted the testimony of the agents in this regard, which he had the right to do and which we accept. The contention as to the use of undue force is thus disposed of.

We have carefully examined the Texas search warrant and the affidavit in connection therewith and conclude that they meet the constitutional requirements. This conclusion was reached after an examination of the affidavit and warrant in light of the guidelines set out in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and other cases that have followed. Under the Aguilar case, we may consider only information brought to the attention of the magistrate. Such affidavit in support of the issuance of a search warrant "may be based on hearsay information and need not reflect direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.'" Id. at 114, 115, 84 S.Ct. at 1514.

The affidavit in support of the Texas search warrant was sworn to by Texas state officers before a magistrate acting under state law. The search warrant was issued and executed pursuant to state law. The affidavit in substance recited that affiants had received information from a reliable source that Schutz had just returned from San Antonio, Texas, with a large quantity of heroin; that the informant had, in the past, provided the officers with reliable information; that a large number of known addicts had been observed going to and coming from Schutz's residence;

that Schutz was well known by the local and state officers as a pusher and user of narcotics; and, that other sources indicate that Schutz is trafficking in narcotics. The affidavit also contained a description of the Schutz residence together with the street address.

In United States v Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, the Court notes that a "commonsense" approach is to be used in considering the "underlying circumstances." In Ventresca the Court upheld a warrant based on personal observations and "information received * * * from other Investigators" and where the affidavit described seven different occasions when a Pontiac was driven into Ventresca's yard and sugar, etc., unloaded. The Court of Appeals had voided the warrant on the grounds that the affidavit did not allege how the other Investigators had received their information, reasoning that it might in turn have been by hearsay.

In McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, the Supreme Court considered probable cause for an arrest without a warrant based upon information from the undisclosed informant. The Court cited to Aguilar and Ventresca for support of the sufficiency of probable cause and from an unidentified informant. In McCray the informant told the police that McCray was selling narcotics and had narcotics on his person and that he had observed McCray selling narcotics. It was stated that the police had known the informant for about two years and that the informant had given them information about 20 or 25 times and that the information had resulted in a conviction. The Court stated that, "The testimony of each of the officers informed the Court of the 'underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant

* * * was 'credible' or his information 'reliable.'" Id. at 304, 87 S.Ct. at 1059.

The affidavit clearly meets the requirements of the Aguilar case and we must conclude that the Texas officers were legally upon the Schutz premises in Austin, Texas, executing the search warrant when they discovered and observed the items of personal property, about which one of the agents testified in this case.

Officer Scholl testified that during the search of the Schutz premises in Austin, Texas, on August 30, 1965, he found two zipper bags, each containing an assortment of tools, among which there were a 48 ounce hammer and a 5/8 inch punch. He further testified that during the progress of the search, because the tools would be considered "burglar tools," he put identifying punch marks on them and initialed and dated each of the two bags. Scholl identified the zipper bag seized in the search of Schutz's Wichita residence as one of the bags and identified a sledge hammer and a punch found near the bank vault immediately after the burglary as two of these burglar tools.

██ Appellant urges that the Texas officers, even if the search was valid, exceeded the authority given to them by the warrant when they placed identifying marks on the items of personal property. These items of property came within the classification of "burglary tools" and the possession of such property, under Texas law, is an offense.[1] In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067, the Court recently stated "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. State of California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202, (1927); Hester v. United States, 265

1. Vernon's Texas Penal Code, § 1402b.

U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; (1924)." Id., 88 S.Ct. at 993, 19 L.Ed.2d at 1069, 1070. In this case, the Texas officers could have seized the burglary tools, but instead they merely placed identifying marks on the items for possible future identification. Under the facts here, we certainly cannot condemn the officers for such adroit police work, rather they should be commended.

■ Appellant's attack upon the validity of the Wichita, Kansas, search is equally without merit. The application described both the real property and the two automobiles sought to be searched. The applicant there stated "that he had probable cause to believe * * * that possession of burglar tools an offense against the laws of the State of Kansas, had been committed and that certain items to-wit: (various items were then described) are contraband or are fruits, instrumentalities of evidence of offense and are located in or upon the described persons, places, things, or means of conveyance; the two vehicles and premises." The supporting affidavit is definite and certain, described the cars and premises, and informed the magistrate that affiant, on the date of the affidavit, had personally, in company with other officers, seen Schutz and Hall with burglary tools in their possession on the premises described and saw the two men load burglary tools into the two described vehicles. Other allegations are contained in this affidavit based on information received from others, which we need not set out because the above set out information based on personal knowledge and observation is surely sufficient to sustain the validity of the issuance of the search warrant.

In the absence of specific objections at the trial to evidence and instructions appellant would have us apply the plain error rule, Rule 52(b), F.R.Crim.P.

■ Appellant urges error because one of the government witnesses, Hattie Mae Warren, was permitted to testify in substance that she was in the Schutz house in Wichita a few days after the bank burglary with the co-defendant, Hall, and received from him an envelope containing some old coins and a diamond ring. She further testified that Hall, on this occasion, also gave her a roll of coins amounting to $45.00. Appellant was present in the home at this time. This witness later sold all of the coins and the ring to a Mr. Walters in Wichita, from whom an F. B. I. agent took possession of all of the items as loot from the bank burglary. This evidence on behalf of the government was necessary to provide the chain of identifying evidence concerning these items of property from possession by the bank to Walters, from whom they were recovered by the F. B. I. agent. The government carefully avoided introduction of any conversations had at this time between the witness and Hall. The evidence introduced was clearly admissible and there was no need for any special instruction to the jury about Hall's connection with such evidence. We have considered all of the instructions given in the case and are unable to conclude that there was any prejudicial error in the giving of the instructions or in failing to give any particular additional instructions. Likewise, appellant's contention that some of the items of personal property admitted into evidence as exhibits were not sufficiently identified is without merit.

■ We have painstakingly considered the entire record in the case and, contrary to the contention of appellant, determine that the evidence, as we have heretofore set it out, was amply sufficient to support the verdict. Also, we are unable to say that appellant did not receive a fair and impartial trial at the hands of the court and jury.

Affirmed.