261 So.2d 119 (1972)
Fred Wesley PRUEITT
v.
STATE of Mississippi.
No. 46746.
Supreme Court of Mississippi.
April 3, 1972.
Rehearing Denied May 8, 1972.
*120 Garner, Whitten & Garner, Frank Trapp, Hernando, William A. Gowan, Jr. (argument only), W.S. Moore, Jackson, (argument only), for appellant.
A.F. Summer, Atty. Gen., by William Jeff East, Sp. Asst. Atty. Gen., Jackson, for appellee.
JONES, Justice:
This case comes from the Circuit Court of Tate County, where appellant was convicted of grand larceny and was sentenced to serve a term of five years in the State Penitentiary, with credit to be given for previous confinement. We affirm.
Prior to September 25, 1969, burglaries had been committed in the northern ten counties of Mississippi, and also in Arkansas, Tennessee, and Kentucky  in areas surrounding the City of Memphis. In and around Batesville, Mississippi, a number of houses had been denuded of furniture  even of pictures hanging on the wall. Many of these affairs had been reported to the police department in Memphis; and undertaking to catch the guilty parties, the officers of Mississippi, including an investigator of the State Highway Patrol, were investigating the burglaries.
Prior to the date aforesaid, an informant had called an investigator in the City of Memphis and had reported the purchase of a television set from the appellant. It was requested that the investigator look at the set and ascertain, if he could, whether it had been stolen or whether it was the property of the appellant. The officer called the distributor for the particular type of television and was advised it had been sold to a store at Batesville. On calling the store, the official was advised the set had been sold to a party at or near Batesville from whom it had been stolen. The investigator for the Mississippi Highway Patrol was contacted, and he advised that he had been working on this particular burglary. At the request of the Memphis official, the Highway Safety Patrolman came to Memphis and brought a Mississippi affidavit and warrant for the appellant.
Thereafter, the Memphis official appeared before a judge of the General Sessions Court with an affidavit for a search warrant and with the warrant to be signed by the judge. From the home of the owners of the television set, there had also been stolen a camera and a radio. Having secured the issuance of the search warrant, the officers then went to the home of appellant, served him with a copy of the warrant and searched for the two articles named in the original search warrant. These two articles were not found. However, many stolen articles were found, including pictures, articles of furniture, equipment, tools, and miscellaneous items. The officer of the Mississippi Highway Patrol had been working on burglaries in and around Batesville and in northern *121 Mississippi, and many articles in open view in the home of appellant had the same appearance as articles stolen from around Batesville. It soon became known rather generally what was occurring, and people came and identified property as having been stolen from them. There were many instances of this kind. Many tools and considerable equipment belonging to one Sinquefield were identified by him.
After many articles thus had been identified and taken by those claiming to be the owner, the owners were permitted to depart with said property; but before leaving, pictures were taken of each one of them beside the property identified. Appellant was tried in the Circuit Court of Tate County, Mississippi, as hereinbefore stated. He was convicted and the case is appealed here.
It is said that the appellant was not afforded a trial and was therefore denied those constitutional rights inherent in a trial, including a trial by jury. It is further said that there was no arraignment.
There was presented to the court both a motion for a continuance and a motion to suppress the evidence obtained by the search. The entire case was fully explored on the two hearings which were held before the judge; and at the conclusion of the hearings, the court having overruled both of said motions, the defendant and the State of Mississippi entered into the following stipulation:
It is stipulated and agreed by and between the Defendant and the State of Mississippi that all the evidence that has been adduced by the Defendant and the State of Mississippi on each of the motions, including the Motion to Suppress Evidence Based on the Search, and all the other evidence that has been adduced in this cause can and shall be considered by the Court as if the same testimony, objections, and all proceedings thereto, as adduced on each of the said motions were produced in chief in behalf of the State of Mississippi or the Defendant and may be used by the Court to determine the Defendant's guilt or innocence.
Thereupon counsel for appellant asked permission to call appellant to testify in regard to the stipulation. He, thereupon having been sworn, testified:
Q. Mr. Prueitt, has an agreement with the State of Mississippi and the Defendant to try this case before the Circuit Judge without intervention of a Jury been executed?
A. Yes, sir.
Q. Did you execute this agreement?
A. I did, yes, sir.
Q. Did you talk this matter over with your lawyers and were you advised by them of the fact that you were waiving a trial by jury but no other rights?
A. Yes, sir.
Q. And you agree to that?
A. Yes, sir.
Q. No further questions.
He was also cross-examined by the district attorney as follows:
Q... . You do understand, Mr. Prueitt, that you do have a right for a jury trial, for a jury to say whether you are guilt [sic] or not guilty, and that would be 12 men?
A. Yes, sir.
Q. All 12 would have to concur that you were guilty beyond a reasonable doubt before they would convict you,
A. Yes, sir.
Q. Knowing all of those things, you still wish to enter this stipulation that has been stipulated to by counsel that you are waiving that right and you are asking Your Honor to decide the case?
A. Yes, sir.
*122 None of the questions hereinabove discussed are jurisdictional; and we hold that by the procedure above set forth, appellant waived any such defects.
Pursuant to the stipulations, the trial judge considered the evidence, adjudicated that the appellant was guilty and later sentenced him. The judgment of conviction and the sentence were entered upon the minutes of the court.
It appears that the original indictment described certain property. During the hearing, a motion to amend by including additional property owned by the prosecuting witness, Sinquefield, was made and sustained by the court.
The judge dictated into the record permission to make such amendment, but we are unable to find any order permitting same. However, testimony as to the other articles added to the indictment was introduced; and there was no objection. Neither was this issue incorporated in the assignment of errors or in the briefs herein filed. We hold that under the circumstances there was a waiver as to this order.
It is argued that there is no testimony in the record showing that the value of the property is more than $100, which is necessary to establish grand larceny. Mr. Sinquefield testified that the heater which was stolen and here involved was valued at $66.95. The assertion is made that this is the only evidence of value in the record. Counsel is mistaken as to this issue. The owner of the property was asked the value of the items that were returned to him by the police department and which were covered by the indictment; his answer was: "About $300.00." In addition to this, a list of equipment identified by the witness as recovered by him was introduced as Exhibit 5 to his testimony; and under the word "recovered" on said list is shown certain property with figures beside each article presumably values, far exceeding the sum of $100. Further, there is in the record a picture of Mr. Sinquefield with his property that was recovered, the picture also being an exhibit. Several of the articles are shown in these pictures. On this entire record, it is apparent that there was sufficient proof to show the value of the property to be over $100.
It is also said that no affidavit for search warrant was introduced. The affidavit and search warrant were printed forms on one sheet of paper, one being at the top of the page and the other below that form. This sheet was introduced into evidence and appears in the record as an exhibit.
Thomas v. State, 200 Miss. 220, 26 So.2d 469 (1946) is authority for the statement that all matters of procedure not jurisdictional are waived when cases are handled in the manner in which this one was.
The assignment of errors only attacked the search warrant, its execution, the reasonableness of the search, and charged lack of probable cause for its issuance.
The reasons given in the affidavit for search warrant for believing the property sought to be in the possession of appellant were stated as follows:
[R]eceived information on September 22, 1969, from a reliable citizen who had purchased a Zenith color television, Serial No. 5029679, from the said Fred Wesley Pruitt, alias Fred Wesley Preuitt, said color television having been stolen in the course of a burglary of a home in Batesville, Panola County, Mississippi, at the time of the commission of said burglary in Batesville, Panola County, Mississippi, there was taken a Nikon camera and one GE table model AMFM radio, and affiant has reason to believe the said camera and radio is at 2974 Arrendale Street, Memphis, Shelby County, Tennessee.
In addition to this, the officer, having been sworn when requesting the judge of the Court of General Sessions to issue the warrant, testified as to the facts leading *123 up to the request for the search warrant. He testified before the judge and disclosed to him the name of the informant. This informant was known to the judge, and the judge knew of informant's reliability. This was the person who told him of the purchase of the television set, such information having led to his investigation. He testified that this informant had been used many, many times and that he had never discovered information given by such informant to be false. As hereinbefore stated, the informant was known to the judge.
Oral testimony is admissible before the officer who is requested to issue a search warrant.
Lieutenant L.K. Rose of the sheriff's office at Memphis obtained the search warrant. It was requested of and issued by a judge of the General Sessions Court in Memphis. When asked to explain about the information he received, Lieutenant Rose told that on September 22, a friend of his came and advised him of certain information hereafter detailed. He had known this informant for approximately 2 1/2 years and had dealt with him or her sometimes 15 or 20 times a month. When asked to name some of the cases depending on the informant, he named 3 or 4 and stated there were many, many more. At this point, objection was made to further naming. December, 1969, being the latest date on which he had obtained information from the informant, he stated that he had never been given information by this person that was not accurate. The information from the informant comes both direct and indirectly  some through other parties. In this case, the informant came to the office and advised him of the purchase of a colored television set from appellant and asked the witness to come to the home of informant, check the set, and see if it were stolen. Rose went to the house, checked the serial number and model number and called the distributors of Zenith televisions in the Memphis area. They reported this set had been sold to a company in Batesville, Mississippi; that company then said the party to whom it had been sold purchased another set because this one had been stolen in a burglary. Witness called a member of the Mississippi Highway Patrol and advised him of what he had found, and the patrolman said that he was working on a burglary at that residence. The witness was furnished a Mississippi warrant for and an affidavit against the appellant. The next morning, with the affidavit and State warrant, witness went before the assistant attorney general who drew a search warrant. Rose then went before Judge Doran to obtain the search warrant. He was asked by Judge Doran if the information contained in the affidavit for search warrant was correct. He asked if the informant was reliable. The witness said: "After I summarized the fact that we had found this television, the circumstances, and who had told me that they had it, and that I had gone to their house and checked it on their request, then he asked me if this was true and correct to the best of my knowledge, and I advised him that it was, then he signed the warrant." The judge administered an oath to Rose. The witness said under oath that he summarized to the judge what he had done. He named the informant whom the judge knew, and who had been before the judge many times. The witness was put under oath when he applied for the search warrant. The attorney for defendant in examining the witness made the statement or asked: "[Y]ou had no information whatsoever on Fred Wesley Prueitt other than this particular informant had allegedly purchased this property from Fred Wesley Prueitt?" Witness answered, "Yes, sir, I had some information on him. I checked my rap sheet and saw where he had a lengthy record, and I was familiar with him." It seems that while the search warrant named only two articles, these were articles that were stolen from the same house as the television set. This evidence would be sufficient to establish probable cause for the issuance of the search warrant.
*124 We think the affidavit is sufficient to show probable cause; but if it is not, certainly it, with the evidence before the judicial officer issuing the warrant, was sufficient. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); United States v. Lipscomb, 435 F.2d 795 (5th Cir.1970-Ala.); United States v. Teller, 397 F.2d 494 (7th Cir.1968-Ill.); Frazier v. Roberts, 441 F.2d 1224 (8th Cir.1971-Ark.); Musgrove v. Eyman, 435 F.2d 1235 (9th Cir.1971-Ariz.); Leeper v. United States, 446 F.2d 281 (10th Cir.1971-Okla.); Schutz v. United States, 395 F.2d 225 (10th Cir.1968-Okla.); Heard v. United States, 245 A.2d 125 (D.C.App. 1968); Hunt v. United States, 171 A.2d 515 (D.C.Mun.App. 1961); State v. McMann, 3 Ariz. App. 111, 412 P.2d 286 (1966); People v. Shafer, 183 Cal. App.2d 127, 6 Cal. Rptr. 594 (1960); Hall v. State, 219 So.2d 757 (Fla.App. 1969); Stewart v. State, 215 So.2d 898 (Fla.App. 1968); People v. Kimmel, 34 Ill.2d 579, 217 N.E.2d 785 (1966); State v. Hardesty, 153 N.W.2d 464 (Iowa 1967); State v. Holmes, 191 Kan. 126, 379 P.2d 304 (1963); Watson v. Commonwealth, 433 S.W.2d 884 (Ky. 1968); Frey v. State, 3 Md. App. 38, 237 A.2d 774 (1968); Strode v. State, 231 So.2d 779 (Miss. 1970); O'Bean v. State, 184 So.2d 635 (Miss. 1966).
The other objections of appellant, to-wit: the illegal execution of the search warrant and the unreasonableness of the search, will be discussed as one.
When the witness and others approached the house, Mr. Prueitt had gotten out of his truck and was entering the backyard. Witness advised him that he was under arrest and that he had a search warrant for his premises. He was advised of his rights; and he told the witness, "Come on gentlemen and search if you've got the warrant." He was then given a copy of the warrant, and they went ahead and searched the house. The record shows that in Mississippi alone there had been burglaries in ten counties in the north end of the state. There had been more than one burglary in each of the counties. Fifteen to twenty-five articles were taken from one family. When the officers searched the residence, they did not find the Nikon camera and radio mentioned in the search warrant. However, they did find numerous articles that were identified by Mr. Herron of the Mississippi Highway Patrol as items stolen from some of the houses in his part of the state; and while the officers were there, other people came in and identified specific articles as having been stolen from them. When a person had identified certain objects as his, the officers took a picture of those articles with the claimant beside the articles and delivered them to the claimant. Many of the articles were removed to the police station and later were claimed by owners.
In 79 C.J.S. Searches and Seizures section 83(e) page 904 (1952), it is said:
Accordingly, officers searching for certain goods described in the search warrant under which they are operating are not necessarily limited to a seizure of the goods therein described, since they may, while making a legal search pursuant to the warrant, seize stolen goods or contraband found on the premises.

Intermingling of goods. Where the things to be seized, because of illegality in their acquisition, are intermingled with similar things which may have been legally acquired, the entire lot of such things may reasonably be seized, subject to subsequent proof by accused as to the legality of his acquisition of each of the things.

Partial illegality. A seizure of goods not described in the warrant does not render the whole seizure illegal, and the seizure is illegal only as to those things which it was unlawful to seize.
In 79 C.J.S. Searches and Seizures section 16, pages 792-93 (1952), it is said:
Where entry on the premises is lawful, contraband open to observation may be *125 seized. Similarly, if entry on the premises is authorized and the search is valid, the constitutional guaranty does not inhibit the seizure of property the possession of which is a crime, even though the searching officers are not aware that such property is on the premises when the search is initiated... .
Among those articles the possession of which has been declared to be illegal per se, and the seizure of which is not within the constitutional guaranty, are "black-jacks," counterfeit coin, gambling devices, forged instruments, lottery tickets, obscene literature, stolen property, and other articles of like character.
It is claimed that this was an unreasonable and indiscriminate search. In addition to C.J.S., see Anglin v. Director, 439 F.2d 1342 (4th Cir.1971); People v. Edwards, 14 Cal. App.3d 57, 92 Cal. Rptr. 91 (Cal. 1970); Commonwealth v. Watcik, 266 N.E.2d 645 (Mass. 1971); Caldwell v. State, 194 So.2d 878 (Miss. 1967); Williams v. State, 216 Miss. 158, 61 So.2d 793 (1953).
The officers were lawfully in the house. The property was in open view, and much of it was recognized as stolen property.
The house had the appearance of a house for storing stolen property; and to hold that the officers had to leave and secure a search warrant for each piece of property seen would, under the circumstances of this case, put an intolerable burden on them and would bestow a premium upon the criminal because of a multitude of burglaries.
All alleged errors (except those as to probable cause and others relating to the search warrant and its execution) are argued because of Mississippi Supreme Court Rule 6(b), reading as follows:
No error not distinctly assigned shall be argued by counsel, except upon request of the Court, but the Court may, at its option, notice a plain error not assigned or distinctly specified.
This rule gives this Court the option to raise "plain errors" not assigned when it deems proper and is not for the purpose of allowing counsel to argue questions not raised by the assignment of errors. We do not deem these matters plain errors and decline to exercise our option to notice them because they do not, in our opinion, amount to such plain errors as are contemplated by the rule.
There seems to be some confusion in the record and briefs as to the spelling of appellant's last name (Prueitt, Preuitt, Pruitt). We have spelled appellant's last name in this opinion as "Prueitt."
Affirmed.
GILLESPIE, C.J., and BRADY, IN ZER and SUGG, JJ., concur.